IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO: 3:05 CV 251

| | |
|---|---|
| SALOMI M. CARSON,<br>Plaintiff<br>vs.<br><br>JOHN E. POTTER,<br>POSTMASTER GENERAL, UNITED<br>STATES POSTAL SERVICE, ET AL.,<br>Defendants. | )<br>)<br>)<br>)<br>)    <u>**ORDER**</u><br>)<br>)<br>)<br>)<br>)<br>) |

**THIS MATTER IS BEFORE THE COURT** on the "Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment" (the "Motion for Summary Judgment") (Document No. 6), filed July 28, 2005 by John E. Potter, Postmaster General of the United States Postal Service (the "Postal Service") and the individually named employees of the Postal Service in their official capacity; the letter from Salomi Carson to the undersigned, dated and filed August 15, 2005 (the "Letter") (Document No. 8), which was sent in apparent response to the Motion for Summary Judgment; and the "Defendants' Reply in Support ..." (Document No. 9), filed August 23, 2005 by the Postmaster General and the individually named employees. Due to Ms. Carson's *pro se* status, the Court sent Ms. Carson notice regarding her right to respond in accordance with *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975). In response, on January 26, 2006, Ms. Carson filed another letter referred to in its text as her affidavit (Document No. 17). The parties have consented to magistrate jurisdiction under 28 U.S.C. § 636(c), and this matter is now ripe for disposition.

Having carefully considered all the written arguments of the parties, the entire record in the

case, and the applicable law, the undersigned will grant the Defendants' Motion for Summary Judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1992, the Postal Service hired Ms. Carson as a "casual," or non-career, employee in its Charlotte Processing and Distribution Center (the "Charlotte Center"). Ms. Carson was employed with the Postal Service in the Charlotte Center until 1995, when she had a child. It is unclear whether Ms. Carson resigned or was terminated at that point. In any event, Ms. Carson did not resume work for the Postal Service after a period of maternity leave. Ms. Carson states that she experienced a mental breakdown at some point following the birth of her child.

On August 25, 2001, the Postal Service re-hired Ms. Carson as a casual employee in the Charlotte Center. Ms. Carson experienced problems with another casual employee named Michelle. At one point, Michelle spoke to a supervisor about Ms. Carson. On October 3 or 4, 2001, the Postal Service terminated Ms. Carson's employment. On October 4, 2001, Dale Apple, one of Ms. Carson's supervisors at the time, completed a form, in which he described the reasons for terminating Ms. Carson's employment as "[a]bsence from work and altercations with other employees." Mr. Apple rated Ms. Carson's job performance as "average" and her attendance and attitude as "poor." When asked to indicate whether he recommended that Ms. Carson be re-hired, he checked "no."

On October 5, 2001, Ms. Carson contacted the Equal Employment Opportunity Office ("EEO Office") and requested an appointment with a Dispute Resolution Specialist. The EEO Office subsequently mailed Ms. Carson a form, entitled "Information for Pre-Complaint Counseling" (the "First Information Form") to complete. Ms. Carson completed the form and hand-delivered it to the

EEO Office on October 17, 2001. In the First Information Form, Ms. Carson alleged that she had been discriminated against on the basis of her national origin, which is Liberian. She described an incident involving Michelle. Ms. Carson stated that she believed the problem had been resolved, but that, on October 3, 2001, she was terminated by Victor Scott, also one of her supervisors at the time. Ms. Carson described Michelle, an African-American female, as the employee similarly situated to her and alleged that Michelle was not terminated "for making [Ms. Carson] feel threatened." By way of relief sought, Ms. Carson asked to be reinstated to her job.

On November 14, 2001, a mediation was conducted between Ms. Carson and presumably representatives of the Postal Service. No agreement was reached, however. On November 20, 2001, Doris W. Blair, a Dispute Resolution Specialist, sent a letter to Ms. Carson (the "Letter"), informing Ms. Carson of her options. Ms. Blair stated in the Letter that Ms. Carson could choose to withdraw her complaint of discrimination, that she could file a formal complaint, or that she could do nothing. Ms. Blair further stated that, if Ms. Carson chose to do nothing, Ms. Carson's complaint would be considered "a closed counseling." Ms. Blair included two forms with the Letter – PS Form 2579-A, entitled Notice of Right to File Individual Complaint, and PS Form 2565, entitled EEO Complaint of Discrimination in the Postal Service. Ms. Blair further cautioned Ms. Carson that Ms. Carson had, "15 days from the receipt of this letter to file a formal complaint. Failure to return PS Form 2565 within 15 calendar days will result in your complaint being dismissed for untimeliness. No response is required if you do not wish to pursue your case." The record reflects that Ms. Carson did not file a formal complaint or have any further contact with the EEO Office until the following year.

Specifically, on April 24, 2002 and on May 1, 2002, Ms. Carson called the Personnel Department of the Postal Service and asked to be reinstated. Ms. Carson was told that she would

not be re-hired.

On May 6, 2002, Ms. Carson again requested an appointment with a Dispute Resolution Specialist. That same day, the EEO Office mailed Ms. Carson another form, entitled "Information for Pre-Complaint Counseling" (the "Second Information Form") to complete. Ms. Carson completed the form and hand-delivered it to the EEO Office on May 9, 2002. In the Second Information Form, Ms. Carson made substantially the same allegations as she had made in the First Information Form. Ms. Carson also stated that she had been to mediation with Mr. Apple; that she was dissatisfied with the result; that she was very upset by Mr. Apple; and that she took "some time off from [her] case" as a result. Ms. Carson again asked to be reinstated to her job.

On May 29, 2002, Ms. Carson hand-delivered to the EEO Office a completed PS Form 2565, entitled "EEO Complaint of Discrimination in the Postal Service" (the "Internal Complaint"). In the Internal Complaint, Ms. Carson repeated the allegations contained in the First Information Form and the Second Information Form.

The EEO Office entered a "Dismissal of Formal EEO Complaint" (the "Internal Dismissal") on July 8, 2002. The EEO Office concluded that Ms. Carson did not timely initiate contact with the EEO Office. The Internal Dismissal also informed Ms. Carson of her appellate rights, stating that she could file a civil action in an appropriate federal court within ninety calendar days of her receipt of the Internal Dismissal or that she could appeal to the Equal Employment Opportunity Commission within thirty calendar days of her receipt of the Internal Dismissal. Ms. Carson received her copy of the Internal Dismissal on July 11, 2002.

On November 25, 2002, Ms. Carson filed a handwritten letter (the "Complaint") , which she entitled "Complaint" and addressed to the "U.S. District Court or Clerk of Court," against the Postal

Service and the individually named employees of the Postal Service in the General Court of Justice of North Carolina, Superior Court Division, for Mecklenburg County, North Carolina. In the Complaint, Ms. Carson makes allegations substantially similar to those made in the First Information Form and the Second Information Form. Ms. Carson also relates what she described as a history of bad treatment of her by the Postal Service, all of which occurred prior to her re-hiring in August 2001. Ms. Carson asks for compensatory damages for her pain and suffering in the amount of four million dollars. Ms. Carson alleges that – as a result of the incidents related above – she has experienced four mental breakdowns, three of which led to her hospitalization. She also represents that she is currently on medication to "help prevent some of the breakdowns."

The Postal Service received a partial copy of the Summons and Complaint on May 4, 2005. The Postal Service and the individually named employees removed the case to this Court on May 31, 2005.

## II. STANDARD OF REVIEW

Because matters outside the pleadings – that is, matters outside the Complaint and the "Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment"– have been presented to, and not excluded by the court, the undersigned has considered all arguments made in the Defendants' motion as made under Rule 56 of the Federal Rules of Civil Procedure.

Rule 56(c) of the Federal Rules of Civil Procedure requires that summary judgment be granted if the pleadings, responses to discovery, and affidavits, if any, establish that "there is no genuine issue as to any material fact ...." Fed. R. Civ. P. 56(c). As this Court has previously explained, "... the moving party has the initial burden to show a lack of evidence to support [the non-moving party's] case. If this showing is made, the burden then shifts to the [non-moving party] who

5

must convince the Court that a triable issue does exist." *Boggan v. Bellsouth Telecomm., Inc.*, 86 F. Supp. 2d 545, 547 (W.D. N.C. 2000) (citations omitted).

A genuine issue of material fact exists if a reasonable jury could return a verdict for the non-moving party on the evidence presented. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The non-moving party opposing summary judgment cannot "rest upon ... mere allegation or denials ..., but ... must set forth specific facts showing that there is a genuine issue for trial." *See Anderson,* 477 U.S. at 248 (quoting *First National Bank of Arizona v. Cities Service Co.*, 319 U.S. 253, 288-89 (1968)). Importantly, in deciding a motion for summary judgment, the court views the evidence presented in the light most favorable to the non-moving party – that is, "[t]he evidence of the non-movant is ... believed, and all justifiable inferences are ... drawn in his favor." *See Anderson*, 477 U.S. at 255.

### III. DISCUSSION

In the Defendants' Motion for Summary Judgment, the Postal Service contends that it should prevail because Ms. Carson did not exhaust her administrative remedies in a timely fashion and because Ms. Carson did not file suit in federal court within ninety days after receiving the final decision of the EEO Office. By way of response, Ms. Carson states that she was not timely in some of her filings because of her mental breakdowns. The Court agrees with the Defendants.

Ms. Carson's claim is first precluded by her failure to exhaust administrative remedies in a timely fashion. Failure to meet the filing deadlines set forth by the EEO renders the alleged discriminatory occurrence without legal consequences. *See, e.g., Nealon v. Stone*, 958 F.2d 584, 589 (4th Cir. 1992); *Harper v. Burgess*, 701 F.2d 29, 30 (4th Cir. 1983). In the instant case, after a failed

6

mediation which occurred as a result of Ms. Carson's first contact with the EEO Office, Ms. Carson was informed that if she wished to pursue her case, she must file a formal complaint within 15 days of November 20, 2001. However, Ms. Carson took no action until nearly six months later. At that time, she contacted the EEO Office again, filing the Second Information Form on May 9, 2002 and a PS 2565 Form on May 29, 2002, making the same allegations as she had previously. The EEO Office properly entered a "Dismissal of Formal EEO Complaint" due to untimeliness. Ms. Carson's failure to the exhaust available administrative remedies at EEO in a timely fashion precludes her claim in this Court.

Additionally, Ms. Carson's failure to initiate suit in this Court within 90 days of receiving the Internal Dismissal from the EEO Office bars her federal lawsuit. "Unless tolled on recognized equitable grounds, the 90 day limit must be adhered to or else the court lacks jurisdiction to adjudicate the plaintiff's complaint." *Harper v. Burgess,* No. 81-0085-L, 1982 WL 31090, at *1 (W.D.Va. 1982) (citing *Stebbins v. Nationwide Mutual Ins. Co.,* 469 F.2d 268, 5 FEP Cases 154 (4th Cir. 1972)). The EEO Office's Internal Dismissal of Ms. Carson's complaint, which was a result of her filing the Internal Complaint on May 29, 2002, informed Ms. Carson of her right to bring suit in federal court within 90 days of July 11, 2002. However, it was not until November 25, 2002 that Ms. Carson filed a complaint - - 137 days after being informed of this right. Absent equitable tolling, this untimeliness renders the Court without jurisdiction to hear the claim.

Furthermore, there are no recognized grounds to equitably toll the time constraints placed on Ms. Carson. "Plaintiffs must carry a heavy burden in order for equitable tolling to apply against the government." *Steele v. Brown,* 993 F.Supp 918, 921 (M.D.N.C. 1998) (citing *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96 (1990)). In *Baldwin County Welcome Center v. Brown*, 466

U.S. 147 (1984), the Court described a series of situations where it would be proper for the 90 day requirement of Title VII to be equitably tolled:

> a case in which a claimant has received inadequate notice; where a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon; where the court has led the plaintiff to believe that she had done everything required of her; or where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction.

*Baldwin County,* 466 U.S. at 151 (internal citations omitted). Furthermore, to the extent Ms. Carson indicates that her mental condition prevented her from meeting the filing deadlines laid out by the EEO Office, it has been held that:

> [i]n order for the Title VII filing period to be equitably tolled by reason of a plaintiff's mental disability, the plaintiff generally must plead and prove that (1) his mental condition prevented him from filing during the specified period, and (2) this condition existed for a majority of the filing period.

*Steele v. Brown,* 993 F.Supp 918, 921 (M.D.N.C. 1998). Such equitable relief for mental disability has not been granted where the condition amounts to something less than "'crippling' and 'exceedingly disorienting'". *See Steele,* 993 F.Supp at 922 (citing *Nunnally v. MacCausland,* 996 F.2d 1 (1st Cir. 1993) (holding that condition where plaintiff was still able to work full time and take care of daily tasks was not significant enough to toll the limitations period as it fell short of the level of mental disability in *Nunnally*).

Ms. Carson establishes no reason for the Court to allow equitable tolling for her claims. There is no indication that any of the considerations in *Baldwin County* are present. Ms. Carson received adequate notice, and the Postal Service took no action to hinder her suit. Ms. Carson does not contend that she was unaware of either time limitation and acknowledges the untimeliness of her suit in her correspondence with the Court. Additionally, Ms. Carson has not met the burden of

establishing a mental disability which would warrant an equitable tolling of the limitations period. While the Plaintiff claims she suffered from mental breakdowns and was depressed, there is nothing in the record to substantiate that the level of her alleged mental impairment amounted to such a crippling effect that she should be granted equitable relief by the Court.

Rather, the Plaintiff simply exhibits a pattern of failure to meet the deadlines which have been set forth for her. Her *pro se* status is also not enough to overcome these failures. "Pro se litigants are entitled to some deference from courts...[b]ut they as well as other litigants are subject to the time requirements and respect for court orders without which effective judicial administration would be impossible." *Ballard v. Carlson*, 882 F.2d 93, 96 (4th Cir. 1989) (internal citations omitted). Thus, the time limits established by the EEO Office are strictly adhered to.

Having found that the Court lacks jurisdiction due to the Plaintiff's failure to seek timely redress, it is not necessary to address the Defendants' alternative arguments attacking the merits of the Plaintiff's case and seeking dismissal of the individual Defendants. Thus, for all of the foregoing reasons, having reviewed the evidence in the light most favorable to Ms. Carson as it must, the Court finds that the Defendants' Motion for Summary Judgment should be granted.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that the "Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment" (Document No. 6) is **GRANTED**; that is, the alternative motion for summary judgment is granted.

Signed: June 16, 2006

David C. Keesler
United States Magistrate Judge